May it please the Court, Counsel. Good morning. My name is Jason Orleans. I represent Acuity, A Mutual Insurance Company, the appellant in this matter. When a commercial insurance insurer, such as Acuity Insurance, is presented with a catastrophic trucking loss, which occurred involving its insured Rex, LLC, which is a Missouri LLC, it's good judgment for the insurance company to surrender its policy limit in the court by way of federal statutory interpleader. This abides by the insurance contract to pay up to the policy limit damages for claims asserted against the insured. The insurer here, Acuity, attempted, in the district court, to equitably deposit its insurance proceeds and pay multiple claims against multiple parties against a single fund. That process was encumbered and disrupted by the subjective claim of the claimant against the funds, a claimant against the funds, the genes that the policy limit stacks to provide something more than a million dollars to the face value of the policy. At most, that assertion, which is not supported by Missouri law, in other words, a liability policy may stack by the number of scheduled units, in this case trucks under the policy, triggers the equitable powers of the district court to render a prompt ruling as to the amount of the fund and to simply disperse it, pursue it to the equitable powers under the statute. That was not done here, and I stand before your honors requesting that that be corrected. It's a privilege to address this issue because in the vast amount of cases that we've reviewed, we don't see a case that addresses an incoherent claim of stacking of an insurance policy limit and the interplay that has with a federal statutory interpleader. The district court erred when it allowed the interpleader case to snowball from one which promoted a judicial economy, which would have been declaring that it had subject matter jurisdiction over the fund and dispersing the fund pursuant to its equitable powers. This court ought to correct that process under its de novo review. Acuity filed the interpleader, again, in response to that catastrophic loss, recognizing its obligation to the insured and the claimants against the fund. So are you saying you want us to decide the stacking issue? Is that one of the things you're asking for a decision on? That's what it sounds like from what you just said. What we're asking for is to reverse the court's October 30, 2017, order that declined to exercise subject matter jurisdiction over the fund. The lower court did that without taking a peek behind the curtain to see whether the stacking claim had any merit. The court's entitled and obligated to do that pursuant to its equitable powers. So you think the appropriate procedure would be to reach in and decide that, the stacking question, first? I believe that the court has. If that's determined against you, then where would it be? Judge Grunder, that's a good question. The court is obligated under the equitable powers of the interpleader statute itself, which says that the district court has to deem the amount of the fund that's deposited proper. That's on the face of 1335A2. So by deeming the fund proper, the court has to, before divesting itself of jurisdiction, the court had jurisdiction, subject matter jurisdiction. It ordered and granted the deposit of the million-dollar policy proceeds. That's the face of the policy. The court then, without determining the merit of the stacking claim, simply accepted it at face value and did not determine whether that claim is proper. The face of the statute says the court must accept what is deemed proper. An incohate claim under the case law of some speculative nature cannot disrupt the subject matter jurisdiction of the court. So, yes, I believe the district court ought to have looked at the merit of the stacking claim to determine whether it had subject matter jurisdiction and ruled in October 30th of 2017 on the substantive issue. The case is, I'm sorry, Judge, if you had a question. And at that point, if it were to determine that stacking did apply and it was $21 million and you had only deposited one, at that point it has no jurisdiction? That would be the case, but the court never reached that decision. The court simply blindly accepted that you have to pay whatever is claimed. I'm just asking what procedure you think is appropriate. I believe that would have been appropriate. And then you either have to deposit the $21 million or there's no jurisdiction. Correct. All right, what about, and I don't think anybody cited this case, but Gaines v. Sunray Oil, it's a 1976 case out of our court. Did you stumble across that at all? Gaines v. Sunray Oil. If not, let me read you a sentence and see what you make of this. Sure. It says a stakeholder may not compel a party to litigate his claim in interpleader unless he deposits with the court an amount equal to the sum claimed by that party. I would suggest, Your Honor, that that is similar to an amount claimed within a fund. So, in other words, if there is legal authority for the claim itself, there's a difference between the amount claimed to be the fund versus the amount of the claim it has to the fund or as part of the fund. And that, I would say, is a distinction that's a very important one because the district court could have and ought to have not approached this case as a mechanical process. It's cited to the asbestos spray case, the Third Circuit case out of 1999, and said, well, it rejected that case and just looked at the amount of the claim to be the fund, the stacking claim, which has no basis in Missouri law, which governs the policy, and said, I don't have subject matter jurisdiction. So the claim against the fund is what should be deposited but not some amorphous claim as to what they believe, they being the Jeans, believe the fund ought to be. They have a claim within the fund, but the fund's a million dollars. And so the court should have peeked behind the curtain and done what the asbestos spray case suggests, and that is to inquire into the underlying merits of the claim to determine the proper amount to be deposited. And if the underlying merit of the claim, the stacking claim, in other words, has no merit under Missouri law because there isn't a case in Missouri that applies stacking to a liability policy that schedules multiple units or multiple vehicles, then the court should have exercised its equitable power either pursuant to the interpleader or pursuant to the supplemental pleading that we filed, the declaratory judgment, and used that as a vehicle to simply and promptly adjudicate the amount of the fund. Then it could have proceeded promptly with the adjudication of the interpleader. But, you know, one big hurdle you have to get over here is, before we get to any of that, is that the insurance company voluntarily dismissed the interpleader count. The court did, Your Honor, the court did. I mean, wasn't it a voluntary dismissal? It was voluntary. Why is that even, you know, that choice was made not to pursue it any further? Why do we even need to be concerned about it? Because, Your Honor, the court basically gave acuity an ultimatum, pay the $21 million without looking at the merit of the claim to the stacking claim, and then forced acuity by way of its order to voluntarily dismiss the interpleader count. And case law from this district has confirmed that acuity or a party need not replead a claim or a count that would be futile. So the voluntary dismissal has all the practical effect of a final appealable order. And, in fact, all orders of the court were rendered final and appealable when the court in March of 2018, I believe it's March 9th order of 2018, determined that it would dismiss the case, allow acuity to dismiss the case to render all of its prior decisions appealable and hold on to the $1 million deposited with the court. So the lower court acknowledged that, essentially, although acuity would be voluntarily dismissing the case, the voluntary dismissal should be accepted as akin to a final decision, an involuntary dismissal because of the situation that the court was placed, acuity was placed in. And I'll just add, and I see I'm getting into some of my rebuttal time, that the finding of a lack of subject matter jurisdiction is akin to a finding as a matter of law. It is a finding as a matter of law, which is akin to a summary judgment. So that finding is really the essence of what we're appealing, that the court lacks subject matter jurisdiction, and this court has jurisdiction to correct what we feel was that error, that the lower court lacks subject matter jurisdiction. And the court need not get into, then, the issue in the declaratory judgment as to whether an out-of-state claimant, third party against a Missouri contract, here the acuity policy issued to Rex, purposely avails itself of the benefits and protections of Missouri law. So your position is that the court gave you no choice, but the court didn't say it was going to grant the motion to dismiss. It said it may, but it really just granted leave for you to take this action or to increase the amount deposited at the insurance company's choice. Why did that situation compel acuity to dismiss its count? Because the court indicated that if acuity did not deposit $21 million, it would, in fact, dismiss the interpleader. Well, I don't think it said it would. It said it may. It said it may, but that's really the practical effect is an involuntary dismissal. It's commercially unreasonable. We have to look at certainly what's reasonable and what's not reasonable. The lower court compelled acuity to pay $21 million without looking at whether the claim that the fund is $21 million has any merit, and it has no merit under Missouri law. So it was really forcing acuity's hand to the point where it had to voluntarily dismiss the claim or risk an assertion certainly by the jeans that you've replete a count that has no merit. So under the Tolan case and its progeny, you do not need to replete a count that the court has threatened. And I think the key from the case law that we cite, which is the Hayward case, is if a count is threatened to be dismissed, that's akin to an involuntary dismissal. And the may language by the court said if you replete this, you may, I may dismiss this case, was akin to a threat of an involuntary dismissal. Suppose the court had ruled the way you say it should have, and the ruling had been the stacking does apply. Where would you be? That stacking does apply? Yeah. If the court were to say that stacking does apply, I believe that in the jeans' own briefing before your honors, they agree that there would be no need for an interplayer because there would be no, the claims would be satisfied from their belief as to what the policy limit is. They would have then obviously basically reformed a Missouri contract to their benefit, but there would be no need for the interplayer. And the case would simply precede the underlying action by the jeans, pending in Williamson County, and any other claims against the fund. There would be no risk of double vexation. One perplexing thing about the underlying lower court's order of October 30th, 2017, is the court makes a finding that there is double vexation, that QD has the risk of multiple claims against a limited fund. Your honors have the authority now to undo that inconsistency. If there's double vexation, isn't the court then taking a peek behind the merit of the stacking claim? If the fund is $21 million, then even by the jeans' own admission, there's no risk of double vexation. But if the fund is $1 million, which is stated in the contract, there's no risk of double vexation. That is an inherent inconsistency in the lower court's order that we're asking to be reversed. If the court is inclined to do so, we don't have to get into the personal jurisdiction, the more esoteric claim. It's a very interesting issue, but it's not necessarily, it doesn't have to be reached as to whether the jeans have purposely availed themselves of Missouri benefits and protections under Missouri law. With that, I'm going to yield to the jeans and reserve my time for rebuttal. Thank you, Judge. Very well. Mr. Prince, good morning. Good morning, your honors. May it please the court, counsel. Good morning. My name is Mark Prince. I, along with my partner, Tyler Daly, are here representing Ronald Jean and the estate of Carol Jean in this matter. Thank you for giving us the opportunity to present our position here. I want to address three issues this morning, time permitting. First is the jeans' position that acuity has waived the right to appeal the subject matter issue. Two, if there is no waiver, there is no subject matter jurisdiction because they did not plead the full amount of the disputed claim into court. And three, if there is subject matter jurisdiction, I'm sorry, if there is no subject matter jurisdiction, then there is no personal jurisdiction on the Missouri interpleader cause of action. Waiver first. The rule is, the majority rule is that if a plaintiff voluntarily dismisses a count, files an amended complaint, does not replead that voluntarily dismissed count, it is waived. It is not considered part of the amended complaint. But it depends on whether it was voluntary or not, right? It does. I believe that's the key analysis. We have cases that say if the district court more or less compels the dismissal, then it's still appealable. I think that's right, and that's the Hayward case. And I think that decision, though, if you look at Hayward, what happened there, the judge was very, shall we say, assertive and said, plaintiff, you need to file a new complaint, an amended complaint, and you need to omit any counts that have to do with the pre-arrest cause of action. If you don't do it, they will be dismissed. Well, the plaintiff was really given, was put between a rock and a hard place in representing his client. If he repled him, he knew it was going to be dismissed. That thus comes in the futility of repleting. So that, in effect, acts as an involuntary dismissal in that case. Contrast that with what happened here in our case. In our case, Judge Fleisig, in a written order, said, acuity, you have not perfected subject matter jurisdiction because you have not interpled the full $21 million that is claimed to be the fund at issue. So, acuity, you've got a choice. Cure the subject matter jurisdiction, perfect it by interpleading an additional $20 million in court, or you can dismiss your case, and I will give you two weeks. I think she entered the order on October 30, and she gave acuity until November 13 to make its decision. They chose on November 13 to voluntarily dismiss the federal interpleader, count one. But aren't they between a rock and a hard place at that point in time? They have to, in order to maintain that count, they have to deposit the, it's pretty clear they needed to deposit $21 million, right? That's right. That's contrary to their position. That is correct. But it's also consistent with the case law that says the full amount of the fund has to be deposited. You can't compel a plaintiff to participate in a defendant. I'm not used to being a defendant in this situation. You can't compel a defendant to participate in the distribution and the extinguishment of liability with the fund that's left. So we're jumping into your second issue now? Yes. There's some interrelatedness, I think, so yes, Your Honor. Okay. I just wanted to make sure you were ready. Normally in a subject matter jurisdiction type argument, there's some basis in the statute that suggests that there would be no subject matter jurisdiction if the full amount is claimed by the underlying plaintiff, so to speak, isn't deposited. And I just don't find any language in 1335 that leads me to think it's subject matter jurisdiction. Can you help me? I don't know that there is any language in 1335, to be perfectly frank, but it's developed through case law, and the case law is clear. That's what I'm trying to ask. On what basis do the cases say that's subject matter jurisdiction? Here's my opinion. Here's what I think the policy is behind that development in the law. It is to prevent what acuity is trying to do here. Acuity is trying to terminate a coverage issue by running to the courthouse and interpleading less than what it knows is the claimed amount. That's evidenced by what they did here. They filed count one, a federal interpleader. Count two, which is unusual, they filed a deck action saying that the policy doesn't stack. So they're aware that that policy is there. When acuity talks about it's not commercially reasonable, I hear that's not financially reasonable. Why do we want to pay an additional $20 million in the court? Why not take the chance where we only have to let a million dollars out of our possession instead of the full claimed amount? That's an end run around the interpleader case law that says you have to deposit the full amount of the claim. Your Honor, you mentioned the, I can't remember the name of the case right now, the Gaines versus the oil company about you can't compel a plaintiff. We didn't cite that specific case in our brief. Sorry, Judge, I'm sorry. But we did cite Metro, or metal transport, which stands for essentially that same proposition. To allow acuity to come in and say, that's what they're trying to do. What circuit is that case from? It's not from the eighth, is it? No, it is from the second. Let me ask you this. I think I understand that probably the majority of circuits that have dealt with this have tended to agree with you. This third circuit, probably not, right? Yes. Okay. Why wouldn't a third circuit's approach make a little bit more sense, given that there's not sort of clear language in the statute? Take a little peek, decide the stacking issue, then determine whether the deposit should be 1 or 21. If they still refuse to deposit 21, they're out, if you win the stacking question. Well, I think the very purpose of an interpleader statute is to avoid complex, drawn-out litigation, which the stacking issue is a complex issue. But this policy clearly stacks under Illinois, which will be the law that governs this dispute. Acuity's policies have been stacked in Illinois before. That's why they're seeking a declaration under Missouri law. So I understand your argument. Your argument is they should deposit the 21 million, then we fight the stacking issue? No. No. Do they ever get to litigate the stacking issue? Yes, in Illinois. Because with the interpleader, if the stakeholder doesn't, my position is, if the stakeholder does not deposit into the court registry the full amount, there is no jurisdiction. There is no subject matter jurisdiction. So we don't get to the issue of whether it stacks or not. They can't have it both ways. They can't deposit what they claim to be the fund and then take a shot at litigating in a favorable venue that they choose to see what's going to happen. That's what they're trying to do. They're trying to get a test opinion about whether it's a million or 21 million. When you interplead, you've got to relinquish control of the funds. So your argument is what they should have done is no interpleader at all, go fight it in Illinois, fight the stacking question in Illinois. That's it exactly. Yes, Your Honor. If they choose to do that, they more or less waive the issue? Well, the purpose of what they're trying to do with the interpleader is cut that dispute off. They're trying to prevent the jeans from arguing that it's a $21 million limit. It's only a million dollars. And so if you're going to interplead, you've got to relinquish control of the full claimed amount. If you don't relinquish it, then you can't argue, you can't force us. Well, as I understand his argument today, maybe different than what it was below, it's that the court should take a peek at the question, decide whether stacking applies. It may not be the form you want it to be in, but at least it gets litigated. And then if it's 21 million, they deposit 21 million or they're done. I think that, yeah, but they won't deposit 21 million at that point in time because it's not commercially reasonable. That time they'll dismiss it and they'll take another shot at litigating in another forum. That's what I'm saying is they're trying to end run the interpleader action to get a sneak peek, a peek behind the cover to see whether it stacks. That's not permissible with an interpleader. You don't get to test whether a policy stacks in an interpleader action. You can't bootstrap a deck action onto an interpleader action. The very fact that they did that shows that they know that there is a legitimate dispute as to the amount of the fund. And it's clear from the case law that you can't deposit a lesser amount than what is claimed and perfect subject matter jurisdiction. Are you, in effect, saying that ACQUITY is guilty of forum shopping? Or are you guilty of forum shopping? Well, that charge could probably be made either way, Your Honor. I think that ACQUITY did, in fact, file the interpleader in Missouri because the laws on stacking in Missouri are more favorable than the laws of Illinois on stacking. And where this accident happened, I cite cases in my brief that will clearly stack this policy. So, yes, they're seeking a more favorable venue. I'm not ascribing any evil motive to that. That's probably good lawyering. But they can't nix our claim on stacking by doing what they're doing in the eastern district of Missouri. Let me go back to this first point and the voluntary dismissal. ACQUITY says that it was faced with a Hobson's choice here because of the decision of the district court in its statement that it may grant the motion to dismiss if ACQUITY did not dismiss the interpleader count or deposit the additional money. Why is that not a legitimate and a winning argument, that they really had no choice but to take the action that they did? But unlike Hayward, they were given a choice. And they chose a course of action. They were told, you don't have, we don't, I don't think we, Judge Fleisig says, I don't think I have subject matter jurisdiction because you've not interpled the full amount of the claimed fund. Here's how you cure that defect. If you want us to proceed with this, this is what I want you to do. There was a case, Waziata, and I know I'm butchering the name, it's cited in both briefs, where there was an interpleader action filed by the stakeholder. Claims were made, counterclaims were made against the stakeholder for claims that would not be covered by the fund. Waziata had not paid that case, paid the money into the court registry. The appellate court remanded the case and ordered them to pay that in the court. So it's not like they were, it's not like they didn't have a choice. They made a financial decision not to cut loose with an additional $20 million. But they made a choice that would have waived the issue, right? If they would have deposited the $21 million, they're giving up the issue. Yes. That's kind of a Hobson's choice, isn't it? But that is the very nature of an interpleader. I mean, do you think they could have repled the $1 million interpleader action? They should have. And it wouldn't have been sanctionable, given that the court said, I don't have jurisdiction, your choices are deposit $21 or dismiss? I don't know what the district court would have done on that. I have, I do this kind of litigation a lot, mostly in Illinois. I have never seen an order like that entered. I mean, there is, sanctions to me ascribes an element of bad faith, where you're telling the judge, I hear you, but I'm not going to listen to you. The judge says, look, $1 million, I don't have subject matter jurisdiction. You can either deposit $21 or dismiss your case. But I find it hard to believe that a district court is going to sanction somebody for making sure they preserve an issue for appeal. That's what they would have done. That's what they needed to do. They waived it. So what should they have done, in your view? Either interplead it or walk away from the interpleader and litigate the stacking issue in a different forum. Well, if they had, okay, we're going to deposit the $21 million. They could still litigate the stacking, couldn't they? What I would do if I was in Acuity's position is I would interplead the full $21 million. I would ask that the Williamson County litigation, the Illinois litigation, be held in abeyance pending that issue. If we want to take a look behind the cover and see whether it stacks,  that's how it is done typically in the jurisdictions I mainly practice in. Okay, because earlier you told me that the court, had they deposited $21 million, could not look at the question of stacking. Well, that is my position on this. But I was asked how they should have reacted to that. And I think that's how they could have reacted to that and still preserved their issue for appeal. Okay. It's not an easy choice, but it is a choice. It is a choice. What if they had done nothing in response to this order of October the 30th? Then I think... And so then the court dismisses count one for lack of subject matter jurisdiction. Then that's an appealable order. I guess that's my point. That would be a viable alternative from the point of the insurance company to get this thing, get an appealable order and put it in posture so that an appellate court could take a look at it. Yes. And I think that would have... to involuntarily dismiss. It's an appealable order. I'm not arguing waiver. But they chose a course of action which was to voluntarily dismiss to walk away from it and then try and litigate in Missouri the stacking issue. They added a second count under Missouri law, under the Declaratory Judgment Statute of Missouri, in which clearly the genes are not subject to personal jurisdiction in Missouri. There are no ties. As far as I know, they've never stepped foot in this state. The only argument for any contact with the state is the expression of an interest in the insurance contract issued by a Wisconsin insurance company to a Missouri resident for an accident that happened in Illinois. I'm not aware of any cases that hold that is even remotely close to being sufficient contacts. Now, with the federal interpleader, that becomes an issue because, much to my surprise, when we were confronted with this, you know, we're all taught complete diversity vests the court or federal question. The federal interpleader has minimal diversity. As long as two of the parties, two of the adverse claimants are diverse, jurisdiction, personal jurisdiction lies. That surprised me, but that's the law. And so once that interpleader count was dismissed, there's no jurisdiction over the genes. So that, I know I kind of rambled and went back and forth. This is a very unusual case, and I appreciate the time you've given me to speak with you. And again, to repeat what you've said, to protect its interest, what should ACUITY have done here, pay in the $21 million, litigate the stacking issue before Judge Fleisig's court or in the District Court of Missouri? Or in Illinois. Because there's a declaratory judgment action on this very same issue filed in Illinois. The issues will be the same as they would have been in Missouri? Yes. And even if we litigate in the Eastern District, there's going to be a choice of law issues to decide because I think the choice of law issues will favor application of Illinois law. None of that's been addressed, of course. Very well. This may not be important now, but I feel compelled to say it. Part of my motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction, and the alternative was to ask for a transfer venue to the Southern District of Illinois. That's in abeyance, or it wasn't ruled on, I guess. It didn't need to be addressed given the order of dismissal. Very well. Thank you, Your Honors. Thank you, Mr. Prince. Your Honors, thank you. There's a lot to unpack here in a short period of time, but what I'd like to do is just start with the general premise that when a litigant such as Acuity is faced with the option to interplead or file any action, there's a choice that is made as to what's the most appropriate venue and jurisdiction. That's not forum shopping. That's simply making an educated choice on the most appropriate venue in which to file an action. Here, Acuity chose the most appropriate venue and jurisdiction, the Eastern District of Missouri. That's the location where it's insured, Rex LLC, is an LLC. Isn't the issue already teed up in the Illinois lawsuit? Actually, Your Honor, it's very interesting. The issue that Mr. Prince referenced that was teed up was teed up in response to our filing the interpleader here in the Eastern District of Missouri. We filed this action in the lower court on December 30, 2016. Mr. Prince filed his personal injury and wrongful death suit in Williamson County and unconventionally did so and included in count nine of a personal injury case in a state that's not a direct action state, a count against Acuity, seeking declaratory judgment of the policy stacks. That's the end run. That's actually the pot calling the kettle black as far as forum shopping goes. Mr. Prince went out and filed a declaratory judgment and said, you know what, Judge in Williamson County, you can decide this issue and usurp the authority of the Eastern District Court or Your Honors on appeal. And that's what he would like. So that's the revelation of forum shopping. Acuity filed this action to protect both claimants against the policy and to protect its insured, which is located in Missouri, where the contract was issued under which state's law is presumptively going to apply. And what the Jeans have done is gone out through their counsel and said, you know what, we've made an assessment against this policy, and we believe it stacks. And we believe that that should be decided in Illinois, which is an inappropriate reaction to where the underlying suit was filed. Can we talk about the waiver question for a minute? Sure. Shouldn't you have either stood on your pleadings as they were and allowed the court to dismiss them or deposited $21 million and then let the issue be decided and then take it up, take up the stacking question? This district has said that the Eighth Circuit has said that when a pleading is futile, when the court has warned you that repleading, here it would have been the interpleader. But you could have stood on it and just allowed the dismissal to happen, right? We could have allowed the dismissal to happen. You didn't have to amend it. We amended because in the exercise of discretion to the judge, the district court said, I'm going to dismiss this claim, so why refile it? And then invite a dispute over a pleading that the court has already warned is not going to stand So we took the most conservative route in discretion to the judge, Judge Fleisig. We said, look, we're going to dismiss the claim voluntarily, but that's akin to an involuntary dismissal. And we don't really have to get hung up on that because ultimately what the court did when it terminated the case because it ruled that it didn't have personal jurisdiction over the declaratory judgment action, which we invited the court to do again. The district court had the opportunity. It was queued up in the declaratory judgment to decide the stacking claim, which we feel has no support under Missouri law. And then it could have revisited the interpleader. Once the court then said, I'm going to dismiss the action in its entirety, all prior decisions, including simply the finding that it lacks subject matter jurisdiction unless $200 million, the incohate claim to the insurance policy fund is deposited, I'm going to dismiss the case. I'd like to just end, because I see that my time is almost up, with just a brief statement about what the significance of the Jeans claim is. And if any claimant to an insurance fund says the policy is something that it's not and can disrupt the prompt and expedient adjudication of a federal statutory interpleader, then the interpleader process is eviscerated, and the equitable powers of the district court is eviscerated, and the contract that was bargained for between the insured and insurer is rendered essentially invalid. I want to thank Your Honors for your time. We're asking that Your Honors reverse the district court order of October 30, 2017, and reinstate the case and remand the case for an adjudication of the interpleader. One quick question. If we went your way and the deposit of $1 million was sufficient, where and when would they have the ability to raise their argument that stacking applies and it should be $21 million at issue? In their answer to the interpleader complaint. So it would be taken up by the district court? It would be taken up by the district court promptly. They could simply answer the interpleader complaint and deny that the fund is $1 million. Okay. All right. Thank you. And where would that be done? That would be done in the district court. And the district court could then take up that issue and decide on the merits, whether it has subject matter jurisdiction or what the fund is. But the court can't just accept blindly that any claim to the fund Very well. Thank you very much for your time, Your Honor. It's an interesting issue. We will wrestle with it.